RECEIVED
IN ALEXANDRIA, LA.

JAN 2 3 2013

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| GEORGE THOMAS, III | CIVIL ACTION NO. 11-408 |
| VERSUS | JUDGE TRIMBLE |
| TOWN OF JONESVILLE, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendants The Town of Jonesville ("Town"), Walter Barber ("Barber") in both his individual and official capacities, and Eldred Roy ("Chief Roy") in both his individual and official capacities (collectively "Defendants").[1] For the reasons expressed below, the court finds that Defendants' motion for summary judgment should be GRANTED in all respects.

I.   RELEVANT FACTS

On the morning of March 15, 2010, Jonesville Police were summoned to the scene of a shooting on E.H. Johnson Street in Jonesville, Louisiana. Barber, a part-time police officer for the Town, who was not on duty at the time, arrived at the scene of the shooting and was asked by Roy, who was then Chief of Police, to accompany the victim, Carl Miller ("Miller") to the hospital in an ambulance. Barber complied and accompanied Miller to the hospital, where he was picked up by a fellow police officer and brought to the police station. While at the station, Barber and other officers received a briefing from Roy concerning the shooting. At Roy's request, Barber dressed in his police uniform and assumed duty status sometime after the briefing.

---

[1] R. 32.

1

Plaintiff was sleeping at his girlfriend's aunt's home when he received a phone call advising him that his sister's boyfriend, Miller, had been shot earlier that day.[2] Upon receiving this news, plaintiff and his girlfriend drove her aunt's car to plaintiff's home in Jonesville and picked up two passengers: Dessera Myles and Latoya Norris.[3] Thereafter, plaintiff, his girlfriend and their two passengers drove to the scene of the shooting, where they were told a fight was taking place involving Dessera Myles' girlfriend.[4] Plaintiff testified that, after arriving at the scene, he stood near the back of their parked car while LaToya Norris fought with the girlfriend of the purported shooter, "Bobo[.]"[5]

After receiving a call reporting a large crowd and fighting, Barber and fellow officer Anita Gable ("Gable") arrived on the scene. Gable and Barber testified that the scene was "chaotic[,]" involving perhaps as many as 100 people and that multiple cars were parked in the middle of the road.[6] Testimony indicates that, as the officers arrived on the scene, plaintiff and his fellow passengers were attempting to get back into their car and leave the scene.[7] Upon exiting their vehicles, Barber and Gable report that a man who goes by the nickname "Bunk" approached and informed them that "they" had a gun.[8] Both Barber and Gable testify that they understood Bunk to be pointing toward the car near which plaintiff was standing.[9]

Barber testified that, upon hearing Bunk's warning of a possible gun in the vicinity, he unholstered his weapon, held it down at his side and instructed plaintiff to "come to the back of the car."[10] Barber recalls that plaintiff asked, "what the fuck you got a gun pulled for?" and went

---

[2] Deposition of Plaintiff (R. 27-6) at 43:14-21.
[3] Id. at 49:1-17.
[4] Id. at 47:2-9.
[5] Id. at 50:4-25.
[6] R. 27-10 (affidavit of Gable) at ¶ 5; R. 27-7 (deposition of Barber) at 59:4.
[7] Deposition of Barber at 72:2-16.
[8] Id. at 56:22 – 57:24.
[9] Id. at 72:2-13.
[10] Id. at 72:15-16.

"on and on" in this manner.[11] Barber testified that he "put [his] hand in his back to step away to pat him down for my safety and his safety, [plaintiff] made a quick spin on me, and I told him, "don't do that again."[12] Barber recalled that plaintiff's resistance continued and that plaintiff spun around a second time and "took a swing" at him.[13] At this point, Barber testified, he pushed plaintiff back against the car and, standing behind plaintiff, locked his arms around plaintiff.[14] Barber stated that Gable ordered him to "take him down to the ground" at that point.[15] Testimony from plaintiff, Barber and Gable establishes that Barber, with his arms wrapped around plaintiff from behind, forced plaintiff to the ground and that Barber fell, with plaintiff, to the ground during the arrest.[16]

Both Barber and Gable testified that plaintiff continued to resist Barber, which prompted Gable to assist Barber in handcuffing plaintiff once he was on the ground.[17] Plaintiff was arrested for resisting an officer and assault[18] and plaintiff was transported to the Jonesville Police Station by another officer on the scene.[19]

Plaintiff told the transporting officer that he was having trouble breathing and was given a bag to breathe into.[20] Plaintiff's handcuffs were also removed at that time.[21] Plaintiff alleges that he passed out, which caused police to summon an ambulance, in which he was transported to the hospital.[22] Defendants assert that plaintiff was never formally booked on the charges for which he was arrested and was released to the custody of the paramedics who responded to his

---

[11] Id. at 72:18-21.
[12] Id. at 72:21-25.
[13] Id. at 73:1-2.
[14] Id. at 76:3-6.
[15] Id. at 76:8-10.
[16] Deposition of plaintiff at 94:9-10; Deposition of Barber at 76:18-19; Affidavit of Gable at ¶ 14.
[17] Id. at 77:6-25; R. 27-10 at ¶ 16.
[18] Deposition of Barber at 95:25; Deposition of Plaintiff at "Exhibit 9" (copy of Louisiana Uniform Traffic Ticket & Complaint dated April 29, 2010).
[19] Deposition of Barber at 75:2-24; 76:10-14.
[20] Deposition of Plaintiff at 76:1-7.
[21] Id.
[22] Id. at 76:22 – 77:17.

3

shortness of breath complaints.[23] Defendants further assert that, after seeking plaintiff's whereabouts for a period of time following these events, Jonesville Police Department Lt. Adams found plaintiff and issued him a notice to appear, charging plaintiff with resisting arrest and battery/assault of Barber on March 15, 2010.[24]

Plaintiff filed suit against defendants on March 14, 2011, alleging federal constitutional claims for excessive force, false arrest and violation of his due process rights.[25] Plaintiff also alleges corresponding Louisiana constitutional violations and state law claims for battery, assault, false arrest and intentional infliction of emotional distress.[26] Additionally, plaintiff asserts claims against defendant Roy for failure to train and/or supervise and for vicarious liability under La. Civ. C. Art. 2320.[27]

The instant motion, filed by defendants, seeks dismissal of all claims against them on various bases. We address the arguments of the parties below. We note that plaintiff's memorandum in opposition to defendants' motion has been deemed a deficient filing for failure to include a Statement of Material Facts.[28] Though notice of the deficiency was provided to plaintiff, the deficiency has never been corrected. In a technical sense, the result of plaintiff's failure to cure the deficiency is that the plaintiff's opposition to the motion is not part of the record in this case, leaving defendants' motion unopposed. Out of an abundance of caution, however, this court will consider the arguments contained in the purported opposition, but we note that plaintiff's failure to reform the opposition may result in prejudice to plaintiff regarding any potential appeal of this court's ruling.

---

[23] R. 27-4 at p. 10.
[24] Id.
[25] R. 1.
[26] Id.
[27] Id.
[28] R. 47.

4

II.  APPLICABLE STANDARD

Summary judgment under Fed. R. Civ. P. 56 is appropriately granted only when the movant shows that there exists no genuine dispute as to any material fact and, therefore, the movant is entitled to judgment as a matter of law.[29] A dispute is "genuine" when the evidence provides a basis for a reasonable jury to return a verdict in favor of the nonmoving party.[30] The existence of a genuine dispute as to any material fact precludes a grant of summary judgment.

Any party seeking summary judgment must cite particular portions of the record, which may include depositions, documents, affidavits or declarations that support the absence of a genuine dispute concerning one or more materials facts.[31] Alternatively, the movant may point out portions of the record which demonstrate the non-moving party's inability to produce evidence in support of one or more claims.[32]

The evidence produced by the parties in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[33] In reviewing the motion, the court will view the evidence in the light most favorable to the non-moving party.[34] The nonmoving party must, however, offer evidence amounting to more than mere "metaphysical doubt."[35]

---

[29] Fed. R. Civ. P. 56(a).
[30] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986); Little v. Liquid Air Corp., 952 F.2d 841, 847 (5th Cir. 1992).
[31] Fed. R. Civ. P. 56(c)(1).
[32] Id.
[33] Fed. R. Civ. P. 56(c)(2).
[34] Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Allen v. Rapides Parish School Bd., 204 F.3d 619 (5th Cir. 2000); In re Municipal Bond Reporting Antitrust Litigation, 672 F.2d 436 (5th Cir. 1982).
[35] Scott v. Harris, 550 U.S. 372 (2007); Meyers v. M/V Eugenio C., 919 F.2d 1070 (5th Cir. 1990).

## III.  ANALYSIS

### A.  Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from personal civil liability as long as the official's conduct does not violate clearly established statutory or constitutional rights, of which a reasonable person should have known.[36] This defense encompasses immunity from suit, not merely from liability.[37] Therefore, when the defense of qualified immunity is raised, the court must assess its applicability at the earliest possible stage of litigation.[38]

The court employs a two-step analysis in determining whether a particular defendant is entitled to qualified immunity.[39] We must ask whether or not the facts alleged by plaintiff, construed in the light most favorable to plaintiff as the nonmoving party, assert a violation of a clearly established constitutional right and whether or not the officer's conduct was objectively reasonable in light of the clearly established law at the time.[40] If the court determines that the facts, when taken as true, fail to allege the violation of a constitutional right, no further analysis is warranted and qualified immunity must be granted.[41]

<u>Plaintiff's Fourth Amendment excessive force claim against Barber</u>

Barber asserts that plaintiff's Fourth Amendment excessive force claim against him should be dismissed because he is entitled to the defense of qualified immunity in this case. In order to establish a claim for excessive use of force, plaintiff must show: (1) an injury; (2) which

---

[36] <u>Pearson v. Callahan</u>, 129 U.S. 223 (2009); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Mace v. City of Palestine</u>, 333 F.3d 621 (5th Cir. 2003).
[37] <u>Pearson</u>, 129 U.S. at 231, quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).
[38] <u>Id.</u>; <u>Porter v. Epps</u>, 659 F.3d 440 (5th Cir. 2011) quoting <u>Pearson</u>, 129 U.S. at 232.
[39] <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Bazan ex rel. Bazan v. Hidalgo County</u>, 246 F.3d 481 (5th Cir. 2001).
[40] <u>Cantrell v. City of Murphy</u>, 666 F.3d 911, 919 (5th Cir. 2012) (recognizing the Court's instruction in <u>Pearson</u> that district courts need not rigidly adhere to the two-step analysis announced in <u>Saucier</u> and may choose which of the two prongs should be addressed first, according to the particular facts of each case).
[41] <u>Lytle v. Bexar County, Tex.</u>, 560 F.3d 404, 410 (5th Cir. 2009) citing <u>Saucier</u>, 533 U.S. at 201.

resulted directly and only from the use of force that was excessive compared to the need, and (3) the force used was objectively unreasonable.[42]

Barber first argues that plaintiff's excessive force claim fails because he shows no more than a de minimis injury, which is insufficient in the context of a constitutional violation claim. Barber points out that plaintiff's complaint lists only "injuries to his chest and ribs[,]" which are described in all available medical evidence as a "contusion[.]"[43]

Plaintiff's memorandum in opposition to the motion fails to address the issue of plaintiff's specific injuries. Indeed the only reference which may be construed as applicable to the instant issue is plaintiff's assertion that Barber's actions toward him constituted a battery.[44] A review of plaintiff's complaint reveals that plaintiff alleges that Barber threw him to the ground "causing injuries to his chest and ribs, making it difficult for [plaintiff] to breathe."[45] The complaint also alleges that this incident caused plaintiff "grievous bodily injury" and "severe emotional distress[.]"[46]

In the context of a motion for summary judgment, once the movant points out that the nonmoving party offers insufficient evidence to establish any essential element of the nomoving party's claim, the burden rests with the nonmoving party to marshal sufficient evidence.[47] While the nonmoving party is entitled to have the evidence construed in the light most favorable to it, the court will not infer the existence of evidence not offered.[48] The court has reviewed the evidence and, as argued by defendants, finds no support for this essential element of plaintiff's claim.

---

[42] Carnaby v. City of Houston, 636 F.3d 183 (5th Cir. 2011); Lockett v. New Orleans City, 607 F.3d 992 (5th Cir. 2010).
[43] R. 27-4 at p. 17.
[44] R. 46 at pp. 12-13.
[45] R. 1 at ¶ 7.
[46] Id. at ¶¶ 17, 42.
[47] Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
[48] Wallace v. Texas Tech University, 80 F.3d 1042 (5th Cir. 1996).

Medical records from Northeast Louisiana Ambulance, LLC indicate that emergency medical technicians ("EMTs") were called to the aid of plaintiff on March 15, 2010.[49] The EMT narrative reports that plaintiff complained of trouble breathing and pain in his ribs.[50] The narrative states that, upon arrival to plaintiff's location, EMTs found him breathing normally.[51] EMTs noted a "contusion" to plaintiff's right ribs, where plaintiff complained of tenderness.[52] Similarly, medical records from Riverland Medical Center, to which plaintiff was transported by EMTs on March 15, 2010, show that plaintiff was diagnosed with a contusion and rib fractures were not demonstrated.[53] Evidence also demonstrates that plaintiff visited a chiropractor once following this incident.[54] Plaintiff produces no evidence of other follow-up treatment or of further diagnosis and, as noted above, does not dispute the defendants' argument regarding the severity of his purported injuries.

As argued by defendants, the Fifth Circuit has held that de minimis injuries are insufficient to support an excessive force claim as a matter of law.[55] The court finds the evidence before us to demonstrate only de minimis injury in this case. Plaintiff neither asserts specific injury, nor offers evidence of continued treatment for any physical or emotional symptoms.

We also agree that, taking plaintiff's factual allegations as true, the force applied by Barber was not excessive compared to the need and was objectively reasonable. Barber was required to possess reasonable suspicion of wrongdoing in order to conduct the investigatory

---

[49] R. 29-2.
[50] Id.
[51] Id.
[52] Id.
[53] R. 29-3, -4.
[54] Deposition of plaintiff at 104:1-15.
[55] Freeman v. Gore, 483 F.3d 404 (5th Cir. 2007); Tarver v. City of Edna, 410 F.3d 745 (5th Cir. 2005).

stop on plaintiff at issue in this case.[56] Reasonable suspicion requires that the investigating officer be able to point to "specific...articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the...seizure."[57] In determining whether or not Barber possessed reasonable suspicion at the time of the investigatory stop, we look at the totality of the circumstances surrounding the event.[58]

Given the uncontroverted testimony that Barber and Gable were warned that plaintiff and/or others with whom he traveled to the scene had a gun, it was clearly reasonable for Barber to subject plaintiff to an investigatory stop and to use the force alleged in order to subdue plaintiff once he resisted the stop and search. We also find support for the reasonableness of Barber's actions in the nature of the scene itself. All evidence before the court demonstrates that it was an unstable scene displaying emotionally-charged violence and exhibiting potential danger to all present. As pointed out by defendants, the weapon involved in the shooting earlier that day had not yet been found and one of the passengers in plaintiff's group, Dessera Myles, was related to the shooting victim.[59] Taking these facts and circumstances into consideration, we find that Barber's suspicion that plaintiff might have been in possession of a gun at the scene to have been reasonable. We find, therefore, that Barber's initiation of an investigatory stop was proper and we reject plaintiff's argument that he was unlawfully detained in this case.

Similarly, we find that the measure of force employed by Barber was reasonable in relation to the need. As expressed above, the scene Barber found upon arrival was dangerous and the court finds his attempt to determine whether or not plaintiff was in possession of a gun to be reasonable in order to protect the safety of himself and others at the scene. Plaintiff's

---

[56] Terry v. Ohio, 392 U.S. 1 (1968); Peterson v. City of Fort Worth, 588 F.3d 838 (5th Cir. 2009).
[57] U.S. v. Peck, 612 F.3d 341, 352 (5th Cir. 2010); United States v. Estrada, 459 F.3d 627, 631 (5th Cir. 2006).
[58] Id.
[59] Deposition of plaintiff at 75:12-25.

testimony affirms that he did not comply with Barber's attempted investigatory stop. Specifically, plaintiff testified that, although Barber ordered him to position himself at the back of the vehicle for purpose of a pat-down search, plaintiff argued and turned around to face Barber, rather than comply.[60]

As argued by defendants, police officers may use a reasonable measure of force in order to effect a detainee's compliance during an investigatory stop.[61] The force is reasonable when it does not clearly exceed the scope of the need. As stated above, the tense and chaotic scene, coupled with the potential danger which may result from the use of a gun at the scene were serious considerations and, given plaintiff's admitted non-compliance,[62] we find Barber's actions in effecting plaintiff's eventual compliance to be well within the scope of reasonable force.

Accordingly, we find that plaintiff has failed to carry his burden of demonstrating that Barber is not entitled to the defense of qualified immunity as to his Fourth Amendment excessive force claim against Barber in this case. Specifically, plaintiff fails to demonstrate more than a de minimis injury or the violation of any constitutional right. Given our finding of no showing as to a constitutional violation, we owe no further analysis. Defendants' motion for summary judgment will be granted as to plaintiff's individual and official capacity excessive force claims and such claims will be dismissed with prejudice.[63]

---

[60] Id. at 90:6 – 93:10.
[61] Newman v. Guedry, 2012 WL 6634975 (5th Cir. 2012) citing Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009).
[62] Plaintiff's memorandum in opposition takes the position that plaintiff lawfully resisted what amounted to an unlawful detention. See, R. 46 at pp. 5-7. As discussed above, we find Barber's investigatory stop to have been based on reasonable suspicion and carried out by the reasonable use of force in light of all uncontroverted facts before the court.
[63] Although qualified immunity does not apply to official capacity claims, plaintiff's official capacity claim would still require that plaintiff demonstrate a constitutional violation. Since the court finds that plaintiff failed to show a constitutional violation in this case, dismissal of plaintiff's official capacity excessive force claim against Barber is warranted.

### Plaintiff's Fourth Amendment false arrest claim against Barber

Defendants' motion next asserts that Barber is entitled to qualified immunity as to plaintiff's Fourth Amendment false arrest claim against him. In determining a defendant's entitlement to qualified immunity to a false arrest claim, the court must determine whether or not probable cause existed for the arrest and, if such cause did not exist, whether the officer's mistaken belief that he possessed probable cause for the arrest was reasonable at the time.[64]

As we discussed above, plaintiff admits that he resisted Barber's investigatory stop, which we have already found to have been lawful based on reasonable suspicion.[65] Barber and Gable testified that plaintiff's resistance to the pat-down search culminated in plaintiff attempting to punch Barber, at which time Gable instructed Barber to subdue plaintiff and place him under arrest for resisting an officer and assault on an officer.[66]

> Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense.[67]

La. R.S. 14:108(A) provides that

> [r]esisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

Plaintiff does not deny that he swung at Barber and does not deny that he otherwise resisted Barber's investigatory stop, which, again, we have already determined to have been

---

[64] Club Retro, LLC v. Hilton, 568 F.3d 181 (5th Cir. 2009); Brown v. Lyford, 243 F.3d 185 (5th Cir. 2001).
[65] Deposition of plaintiff at 90:6 – 94:21; R. 46 at pp. 7, 11.
[66] Affidavit of Gable at ¶¶ 11-13; Deposition of Barber at 80:8 – 20, 96:2-3.
[67] State v. Bell, 395 So.2d 805 (La. 1981).

11

lawful. Accordingly, Barber's belief that plaintiff committed the offense of resisting an officer was utterly reasonable because it took place in his presence. Moreover, officer Gable's affidavit corroborated these uncontroverted facts. We find, therefore, that Barber possessed the requisite probable cause to arrest plaintiff for the offense of resisting an officer in this case. We also find that, because Barber's arrest of plaintiff on that charge was lawful, plaintiff fails to demonstrate that Barber is not entitled to the defense of qualified immunity as to this portion of his false arrest claim.

Plaintiff was also arrested for assault of an officer, which is defined by La. R.S. 14:34.2 as "battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting the in performance of his duty." Battery is defined by La. R.S. 14:33, in part, as "...the intentional use of force or violence upon the person of another..." The facts before the court, cited many times above, demonstrate that, as of the time of arrest, Barber's belief that plaintiff had committed the crime of battery was reasonable and, therefore, that Barber possessed probable cause to arrest plaintiff for this crime.[68] Accordingly, plaintiff fails to demonstrate that Barber is not entitled to the defense of qualified immunity as to this portion of plaintiff's false arrest claim.

Given these findings, defendants' motion for summary judgment will be granted as to plaintiff's entire Fourth Amendment false arrest claim against Barber and such claim will be dismissed with prejudice on the basis of qualified immunity.[69]

---

[68] The court notes that plaintiff does not deny that he attempted to hit Barber or that he physically resisted arrest in a manner constituting battery on an officer in this case. As noted above, plaintiff's contention, rather, is that his resistance was warranted because of the unlawful nature of the investigatory stop and subsequent arrest.

[69] Although qualified immunity does not apply to official capacity claims, plaintiff's official capacity claim for false arrest should still be dismissed because plaintiff, as discussed above, is unable to demonstrate that the arrest was unlawful.

12

<u>Plaintiff's claim under La. Const. Art. I, § 5 against Barber</u>

Art. I, § 5 of Louisiana's Constitution protects against unreasonable searches and seizures and, is, therefore, analogous to the federal Fourth Amendment.[70] The qualified immunity analysis applied by courts to Fourth Amendment § 1983 claims applies equally to Louisiana constitutional law claims.[71] Accordingly, for the reasons expressed above, plaintiff fails to demonstrate that Barber is not entitled to the defense of qualified immunity as to his claim under Art. I, § 5 of the Louisiana Constitution. Defendants' motion for summary judgment will be granted as to this issue and the claims will be dismissed with prejudice.

<u>Plaintiff's presumptive Louisiana law false arrest claim</u>

Under Louisiana law, in order to demonstrate a claim for false arrest, plaintiff must prove that the arrest was unlawful and that it resulted in an injury.[72] An arrest is unlawful if the arresting officer lacked probable cause for the arrest.[73] For the reasons stated above, the court has already found that probable cause existed for Barber's arrest of plaintiff. Accordingly, defendants' motion for summary judgment will be granted as to any Louisiana law false arrest claim against Barber and any such claim will be dismissed with prejudice.

<u>Plaintiff's Louisiana law claims for assault and battery against Barber</u>

Defendants' motion asserts that plaintiff's Louisiana law claims for assault and battery against Barber must fail if the court finds that Barber's investigatory stop and subsequent arrest were lawful and not effected by means of excessive force. Plaintiff argues that Barber's testimony admitting that he did not witness plaintiff participating in any criminal activity before initiating his investigatory stop supports the broader theory that neither Barber's stop, nor his

---

[70] <u>Carter v. St. John Baptist Parish Sheriff's Office</u>, 2012 WL 1752682, *7 (E.D.La. 2012) citing <u>Moresi v. Dept. of Wildlife and Fisheries</u>, 567 So.2d 1081 (La. 1990).
[71] <u>Id.</u> citing <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 296 (5th Cir. 2005).
[72] <u>Saucier v. Players Lake Charles, LLC</u>, 751 So.2d 312, 316 (La. App. 3 Cir. 1999).
[73] <u>Deville v. Marcantel</u>, 567 F.3d 156, 165 (5th Cir. 2009) citing <u>State v. Lindsay</u>, 388 So.2d 781 (La. 1980).

arrest of plaintiff, was lawful.[74] Plaintiff further argues that, since Barber's stop and arrest were unlawful, the force used by Barber against him constituted a battery.[75] Plaintiff offers the corroborating testimony of Ivori Hatten, stating that she recalls that plaintiff was "just standing by the car" when Barber approached him, as evidence that plaintiff was not involved in criminal activity at the time Barber initiated the investigatory stop.[76]

An officer making a lawful arrest may use reasonable force in order to effect the arrest and detention and may also use such force to overcome resistance by the detainee.[77] As explained above, the court finds that Barber's investigatory stop and subsequent arrest of plaintiff was entirely lawful and that the force used was not unreasonable under the circumstances presented to Barber at that time.[78] Accordingly, we find that plaintiff's claims for assault and battery under Louisiana law fail as a matter of law and that defendants' motion for summary judgment should be granted as to these claims.

<u>Plaintiff's state and federal substantive due process claims against Barber</u>

Defendants' motion next asserts that plaintiff's state and federal substantive due process claims should be dismissed if the court finds that Barber's investigatory stop and subsequent arrest of plaintiff were lawful. As explained above, the court finds that the investigatory stop and subsequent arrest were lawfully conducted and did not include excessive force. The court agrees that plaintiff's due process claims must fail as a matter of law based on our above findings regarding the validity of the investigatory stop and subsequent arrest. For these reasons, the court finds that defendants' motion for summary judgment should be granted as to plaintiff's

---

[74] R. 46 at pp. 12-13.
[75] Id.
[76] Id.; Deposition of Hatten (R. 46-3) at 68:2 – 9.
[77] La. C.Cr.P. Art. 222.
[78] Although Hatten's deposition testimony alleges that she witnessed Barber throwing plaintiff around "like a Barbie doll[,]" [R. 46-3 at 70:4-21] the court notes that this is the only testimony offered in this case which makes such an accusation. Plaintiff's own testimony regarding the force applied by Barber does not corroborate Hatten's version of events and plaintiff does not adopt her allegations anywhere in his deficient opposition.

state and federal due process violation claims and that such claims should be dismissed with prejudice.

### Plaintiff's state law claim against Barber for intentional infliction of emotional distress

Defendants' motion asserts that plaintiff is unable to demonstrate the required elements of a claim for intentional infliction of emotional distress ("IIED") under Louisiana law and that such claim should be dismissed.

In order to succeed on a claim for IIED, plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct; (2) that the plaintiff suffered severe emotional distress; and (3) that the defendant desired to inflict or was substantially certain that plaintiff would endure severe emotional distress as a result of his conduct.[79]

Louisiana courts define "extreme and outrageous" behavior as that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[80] As explained in detail above, the court finds that Barber's conduct during the investigatory stop and subsequent arrest was lawful and employed force within the bounds of reasonableness. This conduct cannot, therefore, as a matter of law, constitute "extreme and outrageous" behavior such as would be required for plaintiff's IIED claim.

Though we need not continue with this analysis in light of the deficiency noted as to the first required element of plaintiff's IIED claim, we do so out of an abundance of caution. Defendants next assert that plaintiff offers no evidence of the "severe emotional distress" which is required in an IIED claim. Louisiana courts require a showing of emotional distress "such that

---

[79] White v. Monsanto, 585 So.2d 1205 (La. 1991).
[80] Id. at 1209.

no reasonable person could be expected to endure it."[81] Plaintiff's opposition does not address this issue and offers no evidence of emotional distress, which necessarily fails to rise to the high standard placed on IIED claims. Plaintiff fails, therefore, to demonstrate this second element of a viable IIED claim.

The third required element of a successful IIED claim is a showing that the defendant desired to bring about or was substantially certain his behavior would cause severe emotional distress. Plaintiff sets forth no factual allegations regarding defendant's purported subjective intent to cause any emotional distress.[82] Moreover, plaintiff's opposition does not address this factor or offer evidence which would tend to show that Barber subjectively intended to cause severe emotional distress to plaintiff. We find, therefore, that plaintiff also fails to meet this third requirement of his IIED claim.

Given that plaintiff fails to offer argument or evidence in support of his IIED claim and that there exists no evidence before this court which would, when taken as true, support such a claim, we find that defendants' motion for summary judgment should be granted in this respect and plaintiff's purported IIED claim should be dismissed with prejudice.

<u>Plaintiff's failure to train/supervise claims against Chief Roy</u>

Defendants' motion asserts that, to the extent plaintiff's complaint alleges liability on the part of defendant Chief Roy for any constitutional violations committed by his employee under theories of vicarious liability or respondeat superior, Barber, such claim fails as a matter of law. The court agrees that it is well settled that claims against superiors based on respondeat superior

---

[81] <u>Id.</u> at 1210.
[82] <u>Lambert v. Ware</u>, 2013 WL 139882 (E.D. La. 2013) citing <u>White</u>, 585 So.2d at 1209 and <u>Richardson v. Home Depot USA</u>, 808 So.2d 544, 548 (La. App. 1 Cir. 2001).

theory are not cognizable under § 1983.[83] Accordingly, to the extent that plaintiff advances such claim, it will be denied and dismissed with prejudice.

The court also finds that plaintiff's failure to train and/or supervise claims against Chief Roy should be denied and dismissed with prejudice since the court has already determined that plaintiff fails to demonstrate any constitutional violation by Barber. There can, therefore, be no showing of the requisite "causal link" between any failure to train or supervise and a violation of plaintiff's rights.[84]

<u>Plaintiff's claims against the Town and/or Jonesville Police Department</u>

Defendants' motion asserts that, to the extent plaintiff's complaint states a claim against the Jonesville Police Department ("JPD") for liability in this case, such claim must fail as a matter of law because JPD is not an entity capable of being sued. The court agrees. Louisiana law governs whether or not a non-corporate entity possesses the capacity to sue or be sued.[85] In Louisiana, a municipal police department is not a juridical person and, therefore, may not sue or be sued.[86] Accordingly, to the extent that plaintiff's complaint states such a claim, it will be denied and dismissed with prejudice.

The court also finds that, to the extent plaintiff's complaint alleges liability on the part of the Town of Jonesville based on custom or policy under § 1983, such claim also fails as a matter of law. As above, the court has determined that the evidence offered by plaintiff is insufficient to demonstrate a constitutional violation as a matter of law. Such claim will, therefore, be denied and dismissed with prejudice.

---

[83] City of Canton v. Harris, 489 U.S. 378 (1989); Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).
[84] Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) citing Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) and City of Canton, 489 U.S. 378, 387 (1989).
[85] Fed. R. Civ. P. 17(b)(3); Boice-Durant v. Kenner Police Dept., 2012 WL 2680820 (E.D. La. 2012).
[86] Boice-Durant, 2012 WL at *2 citing Neil v. Schlueter, 2010 WL 497763 at *4 (E.D. La. 2010).

## IV. CONCLUSION

The court has carefully reviewed defendants' motion for summary judgment as well as plaintiff's response, though deficient, and finds that the motion should be granted in full for the reasons explained above. The court will issue a judgment in conformity with this finding.

**Alexandria, Louisiana**
**January 23, 2013**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　JAMES T. TRIMBLE, JR.
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE